UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL ETHRIDGE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOHN DOE, et al.,<br><br>　　　　　Defendants. | Case No.: 1:12-cv-02088-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 24] |

Plaintiff Carl Ethrdige is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

This action is proceeding against Defendants Lawrence, Rodriguez, Rasey and Reyna for retaliation in violation of the First Amendment.

On July 31, 2014, Defendants filed a motion to dismiss the complaint for failure to state a cognizable claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to Court order, Plaintiff filed an opposition on October 7, 2014, and Defendants filed a reply on October 14, 2014.

**I.**

**DISCUSSION**

**A.    Motion to Dismiss Standard Under Rule 12(b)(6)**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim,

1

and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), *cert. denied*, 132 S.Ct. 1762 (2012).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

**B.     Allegations of Complaint**

Plaintiff was engaged in a civil rights complaint against prison officials in case number 07-0595 JAH (PCL) in the United States District Court for the Southern District of California, filed on August 2, 2007. Plaintiff was subjected to ongoing serious acts of retaliation by each of the named defendants due to the exercise of his First Amendment right to participate in an official administrative investigation regarding correctional staff/prison guards serious misconduct and criminal activity which resulted in disciplinary action being taken and arrest of involved staff.

On July 16, 2008, the Court dismissed defendants V. Lawrence and M. Vella from case number 07-0595 because he had not exhausted the administrative remedies prior to filing the action. Plaintiff was instructed to re-file the action after he exhausted the administrative remedies as to those defendants.

1    Plaintiff alleges several instances of retaliatory action due to his exercise of his First
2 Amendment right to file a complaint.
3    Plaintiff was transferred to a level IV facility, despite the fact that serious safety concerns were
4 present.  Plaintiff warned defendants that he would be assaulted or killed in a level IV facility, yet the
5 threat was disregarded.  The threat was only prevented after the court granted his motion for a
6 temporary restraining order and issued a preliminary injunction preventing the placement of Plaintiff
7 at any level IV facility.
8    Plaintiff had his legal mail from the federal court deliberately withheld for over five months
9 and a stay had to be issued in the legal proceedings because defendants presented to the court that
10 Plaintiff had access to his legal mail.  Defendants possessed the legal mail in an effort to get the case
11 dismissed or cause injury to the case.  Plaintiff's legal mail was discovered in a box by another inmate.
12    Plaintiff was subjected to a change in his custody to include a "R" suffix that had already been
13 previously removed after the granting of a successful administrative appeal at another institution.
14 Once the "R" suffix is removed it cannot be reapplied unless there is new and compelling information.
15 Defendants' actions were motivated by retaliation because they were willing to violate their own
16 internal policy.
17    Plaintiff was deliberately subjected to prolonged segregation for almost one year based upon a
18 false charge of threatening staff that was later found to be unfounded.  Plaintiff was not released until
19 the E-facility Captain retired from the California Department of Corrections and Rehabilitation
20 (CDCR).  The captain did not like Plaintiff because he complained about staff and did not like the fact
21 that the court had granted his previous efforts to transfer Plaintiff to a level IV facility.
22    Plaintiff was the subject of acts of retaliation by correctional lieutenant F.A. Rodriguez and
23 correctional officers Reyna and C. Rasey because he was deliberately placed in work assignments that
24 they knew would cause him injury and as a result Plaintiff was injured.  Plaintiff was also threatened
25 with physical violence due to his litigation activities and complaints about prison staff.  Defendant
26 Reyna referred to Plaintiff as a "rat."
27    Plaintiff was deliberately left on the floor and denied emergency medical treatment and
28 services for over thirty five minutes after having passed out in his cell.  While Plaintiff was on the

floor semi-conscious, prison staff merely stated "oh it [is] just Ehtridge he likes to rat on staff." As a result, Plaintiff's blood pressure became dangerously high and he was taken to the hospital an hour thereafter.

Plaintiff was the victim of a violent assault due to the deliberate refusal and prolonged delay in the documentation of critical case information and counseling staff disclosing certain information to another inmate which resulted in the assault.

Plaintiff was subjected to a false disciplinary report due to Defendant V. Lawrence refusing to provide him counseling services to his litigation activities.

### C.     Prior Screening Order

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity, 28 U.S.C. § 1915A(a), and it must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief, 28 U.S.C. § 1915A(b)(1), (2).

The Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable retaliation claim against Defendants Rodriguez, Reyna, Rasey and Lawrence.  (ECF No. 13.)  Because the screening standard does not differ from the standard governing Rule 12(b)(6) motions, Watison, 668 F.3d at 1112, the Court generally views motions to dismiss for failure to state a claim with disfavor. Unless a motion sets forth new or different grounds not previously considered by the Court, it is disinclined to rethink what it has already thought.  Sequoia Forestkeeper v. U.S. Forest Service, No. CV F 09-392 LJO JLT, 2011 WL 902120, at *6 (E.D.Cal. Mar. 15, 2011) (citing United States v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998)) (quotation marks omitted).  This case presents no exception.

In presenting their motion, Defendants contend they are mindful of the Court's screening order, and do not ignore or disregard it in bringing this motion.  Nor are defendants attempting, in bringing this motion, to substitute their conclusions in contravention of those already presented by the Court.  Defendants further contend that it does not appear the Court has determined the particular

grounds for dismissal presented in this motion, nor analyzed the application (or absence) of alleged facts necessary to state a claim, in the manner presented here.[1]

### D.    Retaliation Claims

Prisoners have a First Amendment right to pursue civil rights litigation in the court. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Prisoner may not be retaliated against for exercising their right of access to the courts, and this extends to established prison grievance procedures. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001). Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d at 567-68; accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was the substantial or motivating factor behind defendants' conduct. Mt. Healthy City School Dist. Bd. of Educ. V. Doyle, 429 U.S. 274, 287 (1977). As in any retaliation case, he must show a causal connection between the defendants' retaliatory animus and his subsequent injury. Hartman v. Moore, 547 U.S. 250, 260 (2005). In other words, Plaintiff must allege that the unlawful retaliation would not have occurred in the absence of the filing of the civil rights complaint.

//

//

---

[1] As will be seen below, when the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and found that Plaintiff stated a cognizable retaliation, it was implicit in that order that Plaintiff pled facts, at the pleading stage, sufficient to meet the elements necessary to proceed on a claim of retaliation. (ECF No. 13.)

1.     Adverse Action

Defendants argue that Plaintiff's complaint contains vague and conclusory allegations regarding adverse action taken by Defendants.

"The adverse action need not be an independent constitutional violation." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). For instance, an allegation by an inmate that he was transferred to another prison or placement because he engaged in protected conduct may state a cause of action for retaliation, even though the prisoner has no constitutionally-protected liberty interest in being held at or remaining at a particular facility. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Other actions include: arbitrarily confiscating and destroying an inmate's property and initiating a transfer to another prison (Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005); placing an inmate as a gang member based on evidence previously deemed insufficient (Bruce v. Ylst, 351 F.3d 1283, 1287-1288 (9th Cir. 2003); filing a false disciplinary report (Hines v. Gomez, 108 F.3d 265, 267-268 (9th Cir. 1997); and labeling an inmate a "snitch" in order to subject him to retribution by other inmates (Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)).

Plaintiff contends that Defendants Rodriguez, Rasey and Reyna took adverse action against him by placing him in work assignments they knew would cause him injury. Defendants argue that presumptively there are no inherently dangerous prison jobs, and Plaintiff does not argue to the contrary.

In his complaint, Plaintiff alleges that he was subjected to retaliation by Defendants Rodriguez, Reyna and Rasey deliberately placing him in work assignments that they knew would cause him injury and as a result Plaintiff was injured, and Defendant Lawrence failed to counsel him. The actions were specifically due to Plaintiff's litigation activities and having previously informed on prison staff. Despite Defendants' argument to the contrary, it is not legally significant that Plaintiff failed to indicate what work he was assigned, how he was injured, or how Defendants "knew" he would be injured, or that work assignments clearly advance legitimate correctional goals. If, as Plaintiff alleges, Defendants placed him deliberately in a work assignment that they knew would cause him injury and did in fact cause him injury because of his prior litigation and/or complaints against prison staff, Plaintiff meets the adverse action element for a claim of retaliation. Defendants' arguments that

assigning inmates to work and inmate counseling programs clearly advance legitimate correctional goals is misplaced because a Rule 12(b)(6) motion tests only the adequacy of the pleading, not the Plaintiff's ability to prove his claim.

   2.   Causation

Defendants argue that Plaintiff does not allege that any of them knew of his prior lawsuit or the administrative investigation that are referenced in the complaint as the proceedings in which his protected activities arose.

The causation element of a First Amendment retaliation claim requires the inmate plaintiff to show that protected conduct was the substantial or motivating factor underlying the defendant's adverse action. Brodheim v. Cry, 584 F.3d at 1271. "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, [citation omitted], courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred.

Plaintiff alleges that he previously filed a complaint in the United States District Court for the Southern District of California in 2007, and was thereafter subjected to retaliation by several prison officials. Defendant Lawrence acknowledges that an "inference could be drawn that [he] knew of the prior lawsuit because the Complaint alleges that Lawrence was dismissed from it on July 16, 2008." (Mot. to Dismiss, ECF No. 24, at 7.) Defendant Reyna also acknowledges that the inference could be drawn that he "knew of the prior administrative investigation because the Complaint alleges Reyna called [Plaintiff] a rat." (Id.)

Contrary to Defendants' argument, the totality of the allegations in Plaintiff's complaint are sufficient to establish a causal connection between his protected conduct and the alleged adverse actions from which a reasonable trier of fact could infer that Defendants' actions against him were retaliatory. Despite Defendants' assertion that Plaintiff's allegations are merely conclusory, the Court finds that Plaintiff has pled sufficient factual content as to give Defendants "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. As noted above, Plaintiff has alleged that Defendants Rodriguez, Rasey and Reyna subjected Plaintiff to a deliberately placed

him in dangerous work assignment which lead to physical injury and Defendant Lawrence failed to counsel him because Plaintiff previously filed staff complaints and a lawsuit.

    3.    Chilling Effect

Defendants argue that Plaintiff has failed to allege his protective activities were "chilled" as a result of Defendants' actions. Defendants contend Plaintiff has not alleged any facts showing that Defendants' conduct chilled or silenced his speech, or that an ordinary person's speech/activities would be chilled.

> [A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.' [Citations omitted.] To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.' [Citation omitted.]

Brodheim, 584 F.3d at 1271. "'[S]ince harm that is more than minimal will almost always have a chilling effect[, a]lleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety." Id. at 1270 (quoting Rhodes v. Robinson, 408 F.3d at 568 n.11).

Here, Plaintiff's allegations are sufficient because it can be inferred that being deliberately placed in a work assignment that will (and did) cause injury would discourage an ordinary person from filing any further complaints. The Court therefore finds that Plaintiff sufficiently pled a "chilling effect."

    4.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff has failed to allege sufficient facts to demonstrate that Defendants violated his constitutional rights.

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension."

Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151 (2001)) (internal quotation marks omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made. . . ." Estate of Ford, 301 F.3d at 1049 (citing Saucier at 205) (internal quotation marks omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier, 533 U.S. at 201; Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint. See Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999). A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not appropriate unless it can be determined "based on the complaint itself, that qualified immunity applies." Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001); Rupe v. Cate, 688 F.Supp.2d 1035, 1050 (E.D. Cal. 2010) (denial of qualified immunity because could not be clearly determined on the face of complaint but stated the ground could be raised by way of motion for summary judgment).

At this stage of the proceeding, this Court may consider only whether the facts as alleged in the first amended complaint plausibly state a claim and whether that claim asserts a violation of a clearly established right. In this case, Plaintiff's First Amendment right to file inmate grievances and/or lawsuits free from prison official retaliation was clearly established well before the alleged violations took place. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Liberally construed, Plaintiff alleges that Defendants Rodriguez, Reyna and Rasey placed him in dangerous work assignments knowing it would lead (and did cause) physical injury, and Defendant Lawrence refused to counsel him for filing a previous lawsuit and/or inmate grievance. Assuming the truth of these allegations, it

cannot be said that Defendants' actions did not clearly violate a constitutional right or that no reasonable officer would have thought it lawful to retaliate against an inmate for his First Amendment activity. It cannot be determined based on the face of the complaint itself that qualified immunity applies. The determination of whether Plaintiff's constitutional rights were violated hinges on further development of the facts. Accordingly, Defendants' motion to dismiss based on qualified immunity should be denied.

## II.
## RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss Plaintiff's complaint be DENIED in its entirety.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 18, 2014**

UNITED STATES MAGISTRATE JUDGE